UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GRACIELA LIZARDI ESTRADA,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br><br>Defendant. | Case No. 5:16-cv-06998-EJD<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 14, 17 |

Plaintiff Graciella Lizardi Estrada ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) to obtain review of a final decision by the Commissioner of the Social Security Administration[1] denying her claim for Disability Insurance Benefits ("DIB") benefits. In a Motion for Summary Judgment, Plaintiff seeks an order reversing the decision and awarding benefits, or alternatively, remanding the action to the Commissioner for further administrative proceedings. Dkt. No. 14. The Commissioner opposes Plaintiff's motion and seeks summary judgment affirming the decision denying benefits. Dkt. No. 17. For the reasons discussed below, Plaintiff's motion is GRANTED and the Commissioner's motion is DENIED. The action is VACATED and REMANDED to the Commissioner for further administrative proceedings.

**I.  BACKGROUND**

   **A.  Procedural History**

Plaintiff applied for DIB on November 13, 2013, alleging a disability onset of December 1,

---

[1] The current acting Commissioner of Social Security, Nancy A. Berryhill, is automatically substituted as defendant in place of her predecessor. Fed. R. Civ. Proc. 25(d).

Case No.: 5:16-cv-06998-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
1

2011. Tr., Dkt. No. 13, at 74. She seeks benefits beginning from the onset date. Plaintiff's claim was initially denied by the Commissioner on February 12, 2014. *Id*. at 102. Plaintiff requested reconsideration of that decision, which was denied by the Commissioner on June 9, 2014. *Id*. at 110, 111.

Plaintiff subsequently requested a hearing before an administrative law judge ("ALJ"), which occurred before ALJ Brenton L. Rogozen on June 17, 2015. *Id*. at 25-34. Plaintiff, represented by counsel, testified on her own behalf. *Id*. at 51-73. The ALJ also heard testimony from James C. Westman, a vocational expert. *Id*. In a written decision dated June 26, 2015, the ALJ ultimately found that Plaintiff was not disabled. *Id*. at 25-34.

Plaintiff sought administrative review of the ALJ's determination. *Id*. at 17-18. On October 18, 2016, the Appeals Council denied the request for review, and the ALJ's decision became the final decision of the Commissioner. *Id*. at 1. Plaintiff then commenced this action, and the instant summary judgment motions followed.

### B. Plaintiff's Personal, Vocational and Medical History

According to her application for benefits, Plaintiff was born on December 22, 1964, and was 46 years old at the time of the hearing. *Id*. at 165. Plaintiff has a first grade education, which she completed in 1980. *Id*. at 185. Plaintiff is fluent only in Spanish and has limited ability to read and write. *Id*. at 53, 63. From 2002 to 2011, Plaintiff worked as a seasonal agricultural laborer. *Id*. at 202. In 2005, Plaintiff also worked at a restaurant, where she washed dishes, cleaned bathrooms, and made salads. *Id*. at 203.

Plaintiff began receiving psychological treatment in 2008, and, since at least 2009, has been taking medication for schizophrenia and depression. *See id*. at 60, 232. Her doctors report that some of the side effects of this medication include dizziness, blurry vision, and headaches. *See id*. at 232, 332.

In the summer of 2011, Plaintiff experienced several fainting episodes while working in the fields in hot weather. *See id*. at 331; *see also id*. at 60-61. Plaintiff testified at the hearing that,

while working, she "would feel dizzy, tired" and that she fell two times. *Id*. at 60. When she saw her psychiatrist, Dr. Guiroy, that following January, she expressed worry that she may not be able to return to work the coming season. *Id*. at 331.

The following winter, Plaintiff continued to experience faintness and dizziness. *Id*. at 332. At her February 23, 2012 appointment, Dr. Guiroy noted that "side effects" from her medication included "faintness and dizziness" and being "unable to adjust body temperature to outside temperature." *Id*. He also explained to Plaintiff that "Abilify or any antipsychotic mood stabilizer can cause[] her inability of her body to adjust to outside temperature" and suggested that she slow down and stay in the shade. *Id*. Plaintiff did not return to work that summer. *See id*. at 202, 333.

Plaintiff continued to see Dr. Guiroy on a monthly or bi-monthly basis throughout 2012. *Id*. at 333-38. For the most part, Dr. Guiroy reported that Plaintiff was mentally stable: she had no delusions or hallucinations, her mood and affect were "good," and her insight and judgment were intact. *See id*. She did, however, experience weight gain as a result of her medications, so Dr. Guiroy adjusted her prescriptions to try to curb those effects. *Id*. at 334, 336, 337.

In late November 2012, however, Plaintiff's depression worsened. *Id*. at 340. When she saw Dr. Guiroy in December, Plaintiff recounted that her son had recently gotten stabbed, she witnessed her daughters physically assaulting each other, and that her mother in law was suffering from psychotic episodes and recently started a fire in their house. *Id*. at 340-41. Plaintiff reported that, since then, she had been feeling anxious and could not sleep well, worrying that something could happen to her children. *Id*. Dr. Guiroy increased the dosages on her medications and prescribed new ones. *Id*.

The following year, Plaintiff continued to experience depressive episodes but eventually made progress towards managing her symptoms with medication. When Dr. Guiroy saw her in March 2013, he noted that Plaintiff reported feeling depressed and showed signs of paranoia. *Id*. at 342. In May 2013, Dr. Alia Karim, another treating psychiatrist who took over for Dr. Guiroy, reported that Plaintiff continued to experience panic attacks, feelings of dread and foreboding, and

fears for her children. *Id*. at 344-45. In July 2013, Dr. Karim reported that "coping is difficult at this time but [Plaintiff] does try to manage . . . . [S]he accepts her illness and believes treatment is helpful." *Id*. at 346. In August 2013, Dr. Karim reported that "[w]hile medication is adequate for management of psychosis, agitation and impulsivity," Plaintiff "still has difficulty with apprehension, anger, and coping." *Id*. at 351. In October 2013, Dr. Karim reported that Plaintiff was relatively stable, but "continue[d] to need support with problem solving and ha[d] stress vulnerability. *Id*. at 355.

This trend continued throughout 2014 and 2015. In January 2014, Dr. Karim again reported that she seemed relatively stable—she was "[n]icely dressed," "fully oriented," had "good" attention/recall, and was "more involved in activities at home and in the community." *Id*. at 357-58. In April 2014, Dr. Karim reported that Plaintiff was "feeling very pleasant, that her "[c]oping has improved," and that she "continues to benefit from medication." *Id*. at 476. In October 2014, Dr. Karim reported that Plaintiff was "comfortable at home" and "is in control of her home and family." *Id*. at 515. In January 2015, Dr. Joan Danserau, another treating psychiatrist who took over for Dr. Karim, reported that Plaintiff was "overall . . .doing well" and that her "[d]epression and irritability are much better now than before." *Id*. at 528. In April 2015, Dr. Danserau reported that, although Plaintiff continued to have periods of anxiety, her overall clinical status was stable and her paranoia and depression had significantly improved. *Id*. at 535. In June 2015, the final treatment note submitted by Plaintiff from her psychiatrists, Dr. Danserau reported that Plaintiff's symptoms were controlled "for the most part" and was "able to cope" with them. *Id*. at 545.

Nevertheless, even with her symptoms generally under control, Plaintiff was not entirely free of depressive episodes. For example, in March 2014, Plaintiff's social worker noted that Plaintiff had "feelings of depression and anxiety." *Id*. at 454. In July 2014, Dr. Karim reported that "when [Plaintiff] is off her medication . . . she gets so depressed and demotivated that she doesn't get up, change her clothes or bathe for days at a time." *Id*. at 476. In June 2015, Dr.

Case No.: 5:16-cv-06998-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
4

Danserau reported that Plaintiff still "at times hear[d] voices" and that she had "bouts of anxiety." *Id*. at 545. The records also reveal that Plaintiff was general timid about accepting responsibility or interacting with the outside world. For example, in March 2014, Plaintiff's social worker reported that Plaintiff was worried because her family expected her to care for her grandchildren, but Plaintiff "felt uncomfortable providing care for her grandchildren due to her mental health conditions." *Id*. at 457. Her social worker also noted that Plaintiff "gets very nervous and forgets to report important information to her health care providers." *Id*. In September 2014, Dr. Karim reported that Plaintiff was "hesitant to move forward without reassurance" and that she was "fearful and hesitant to proceed on her own." *Id*. at 504. In June 2015, Dr. Danserau reported that Plaintiff's mood was "slightly anxious with a constricted affect." *Id*. at 545.

## II. LEGAL STANDARD

### A. Standard for Reviewing the ALJ's Decision

Pursuant to 42 U.S.C. § 405(g), the district court has authority to review an ALJ decision. The court's jurisdiction, however, is limited to determining whether the denial of benefits is supported by substantial evidence in the administrative record. 42 U.S.C. § 405(g). A district court may only reverse the decision if it is not supported by substantial evidence or if the decision was based on legal error. *Id*.; *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).

"Substantial evidence" is more than a scintilla, but less than a preponderance. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). This standard requires relevant evidence that a "[r]easonable mind might accept as adequate to support a conclusion." *Vertigan*, 260 F.3d at 1049 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). A court must review the record as a whole and consider adverse as well as supporting evidence. *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 882 (9th Cir. 2006). The court must affirm the ALJ's conclusion so long as it is one of several rational interpretations of the evidence. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). However, the court reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ

Case No.: 5:16-cv-06998-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
5

on a ground upon which he [or she] did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

### B. Standard for Determining Disability

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The impairment must also be so severe that a claimant is unable to do previous work, and cannot "engage in any other kind of substantial gainful work which exists in the national economy," given the claimant's age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

"The claimant carries the initial burden of proving a disability." *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (observing that the claimant must satisfy the burden on the first four steps of the evaluative process). If the claimant proves a prima facie case of disability, then the Commissioner has the burden of establishing the claimant can perform "a significant number of other jobs in the national economy." *Thomas*, 278 F.3d at 955; *Bowen*, 482 U.S. at 146 n.5 ("[T]he Secretary bears the burden of proof at step five, which determines whether the claimant is able to perform work available in the national economy."). "The Commissioner can meet this burden through the testimony of a vocational expert or by reference to the Medical Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2." *Thomas*, 278 F.3d at 955.

The ALJ evaluates Social Security disability cases using a five-step evaluation process. 20 C.F.R. § 416.920. The steps require the following analysis:

(1) The ALJ must first determine whether the claimant is presently engaged in substantially gainful activity. 20 C.F.R. § 416.920(b). If so, the claimant is not disabled; otherwise the evaluation proceeds to step two.

(2) The ALJ must determine whether the claimant has a severe impairment or combination

of impairments. 20 C.F.R. § 416.920(c). If not, the claimant is not disabled; otherwise the evaluation proceeds to step three.

(3) The ALJ must determine whether the claimant's impairment or combination of impairments meets or medically equals the requirements of the Listing of Impairments. 20 C.F.R. § 416.920(d). If so, the claimant is disabled; otherwise the analysis proceeds to step four.

(4) The ALJ must determine the claimant's residual functional capacity despite limitations from the claimant's impairments. 20 C.F.R. § 416.920(e). If the claimant can still perform work that the individual has done in the past, the claimant is not disabled. If the claimant cannot perform the work, the evaluation proceeds to step five. 20 C.F.R. § 416.920(f).

(5) In this step, the Commissioner has the burden of demonstrating that the claimant is not disabled. Considering a claimant's age, education, and vocational background, the Commissioner must show that the claimant can perform some substantial gainful work in the national economy. 20 C.F.R. § 416.920(g).

### III. DISCUSSION

The ALJ made the following findings and conclusions on the five steps: (1) for step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 1, 2011; (2) for step two, the ALJ determined that Plaintiff had the severe impairments of schizophrenia and a panic attack disorder; (3) for step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the requirements of the Listing of Impairments; (4) for step four, the ALJ determined that Plaintiff had the residual functional capacity to perform medium work as defined in 20 C.F.R. 404.1537(c) with some exceptions,[2] but that she was not capable of performing past relevant work; and (5) for step

---

[2] Specifically, the ALJ found that Plaintiff could: lift, carry, push, and/or pull 50 pounds occasionally and 25 pounds frequently; stand and/or walk for about six hours in an eight-hour workday; and sit for about six hours in an eight-hour workday with normal breaks. Tr. 29. However, the ALJ found that Plaintiff was limited to the performance of work involving simple repetitive tasks in a Spanish-speaking environment that does not require any reading. *Id*. The ALJ also found that Plaintiff must avoid all exposure to extreme heat or cold. *Id*.

five, the ALJ determined that other jobs exist in significant numbers in the national economy that Plaintiff can perform. Tr. 25-34.

In her motion, Plaintiff argues: (1) the ALJ erred in assessing Plaintiff's credibility regarding the intensity, persistence, and limiting effects of the symptoms resulting from her impairments; (2) the ALJ did not give the requisite weight to the opinions of Plaintiff's treating psychologists; and (3) the ALJ failed to consider all of Plaintiff's impairments and their combined effects. Mot. 8-10. The Court considers each in turn.

### A. The ALJ Did Not Provide "Specific, Clear and Convincing" Reasons for Discrediting Plaintiff's Testimony

Plaintiff first challenges the ALJ's assessment of her credibility. In her application, Plaintiff reported symptoms of high blood pressure, high cholesterol diabetes, depression, and panic attacks, and alleged that these symptoms caused difficulties with communication, memory, task completion, concentration, understanding, following instructions, and getting along with others. *Id*. at 205-12. Plaintiff also reported that her symptoms restricted her ability to sustain gainful employment, complete activities of daily living, and engage in normal social functioning. *Id*. In determining Plaintiff's residual functional capacity under step four, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were "not entirely credible," as they conflicted with record evidence that (1) Plaintiff could perform "a wide range of activities of daily living;" and (2) Plaintiff had a normal relationship with her family and occasionally attended church services. *Id*. at 30.

In her motion, Plaintiff argues that the ALJ's assessment of her credibility was erroneous, as it ignores other evidence which supports Plaintiff's characterization of her symptoms, including that Plaintiff is unable to function without medication, Plaintiff only assists other members of her household with activities of daily living, and Plaintiff is only able to attend church when accompanied by others. Mot. 8.

The ALJ must engage in a two-step analysis when evaluating a claimant's credibility. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, the ALJ determines

Case No.: 5:16-cv-06998-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
8

"whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. at 1036 (internal quotations omitted). Second, if the claimant has met the first step and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id*. (internal quotations omitted); *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *Garrison*, 759 F.3d at 1014-15. An ALJ must "specifically identify what testimony is credible and what testimony undermines claimant's complaints." *Morgan*, 169 F.3d at 599.

The ALJ may consider many factors when weighing credibility, including "reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (internal quotations omitted). An ALJ's assessment of a claimant's credibility and pain severity is entitled to great weight. *See Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989). "If the ALJ's credibility finding is supported by substantial evidence in the record, [the reviewing court] may not engage in second-guessing." *Id*. (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)).

Here, the ALJ found under step one that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 30. The ALJ also made no finding that there had been any evidence of malingering. *See id*. Thus, in order to reject Plaintiff's testimony regarding the severity of her symptoms under step two, the ALJ was required to provide "specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036.

The ALJ failed to meet this standard. First, his reasons for rejecting Plaintiff's testimony are not specific. The ALJ refers generally to Plaintiff's "alleged functional limitations" and describes at a high-level the difficulties that Plaintiff claims her symptoms have caused. Tr. 30. However, the ALJ does not "specifically identify what testimony is credible." *Morgan*, 169 F.3d at 599. As such, his assessment amounts to a generalized doubting of Plaintiff's credibility, which

falls short of the specificity the Ninth Circuit requires.

Second, although the ALJ gives more generalized reasons for "question[ing]" Plaintiff's credibility, they are not clear and convincing. The ALJ's first reason is that Plaintiff's alleged inability to sustain gainful employment conflicts with evidence that she "can perform a wide range of activities of daily living, such as preparing basic meals, washing dishes, laundering clothes, sweeping, mopping, and grocery shopping, without significant issue." Tr. 30. However, the Ninth Circuit has repeatedly cautioned against penalizing a disability claimant simply because that person has attempted to maintain some semblance of a normal daily life. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("Several courts, including this one, have recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."); *see also Orn*, 495 F.3d at 639; *Vertigan*, 260 F.3d at 1050. Indeed, "[m]any home activities are not easily transferable to . . . the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Here, the ALJ made no attempt to determine whether the "wide range of activities of daily living" which he found that Plaintiff could perform were transferrable to the "more grueling environment of the workplace." *Id*. As such, the ALJ rested his assessment on an activity level which may or may not support an ability to perform in a workplace environment. This is not clear and convincing.

Further, the ALJ's conclusion that Plaintiff could perform a "wide range of activities of daily living . . . without significant issue" is misleading and not supported by substantial evidence. Plaintiff admits that she can perform certain activities of daily living. *See, e.g.*, Tr. 194-95, 247-48. However, the ALJ overstates the extent to which Plaintiff engages in these activities, or can do so "without significant issue." According to the same functional report relied on by the ALJ, Plaintiff only "assists" her daughters with "some" dishwashing, laundering, and mopping and needs reminders to do these things. *Id*. at 194. The functional report also indicates that Plaintiff cannot go outside on her own but must be "supervised" by her husband or daughters. *Id*. at 195.

Further, when she does go shopping, the functional report clarifies that she "goes with [her] husband who selects what is needed." *Id*. at 195. Other functional reports in the record paint an even more limited picture of Plaintiff's abilities. *See, e.g.*, *id*. at 207-08 (2014 functional report submitted by Plaintiff indicating that only her husband and/or daughters prepare meals, do housework, or go shopping); *id*. at 247-48 (2015 functional report submitted by Petra Mansfield, Plaintiff's social worker, indicating that: Plaintiff "can cook for herself," but is assisted by her family and "cannot cook meals that are too time consuming;" Plaintiff's attention span and lack of focus interfere with her ability to complete household chores; and Plaintiff goes grocery shopping "with her family"). Accordingly, the ALJ's view of the evidence is skewed and not supported by substantial evidence.

The ALJ's second reason for doubting Plaintiff's credibility is that Plaintiff's alleged limitations in social functioning were "unsupported by the record, which suggests that [Plaintiff] has a normal relationship with her husband and occasionally attends church services." *Id*. at 30. This too is not a clear and convincing reason. The ALJ made no attempt to show or explain why a normal relationship with her husband or occasionally attending church services is inconsistent with Plaintiff's claimed limitations in social functioning. Indeed, they may very well be consistent: the former requires no interaction with the outside world, and the latter could be accomplished with little or no communication with other people.[3] As such, this rationale is not clear and convincing.

In sum, the ALJ does not specifically identify which of Plaintiff's testimony is credible, relies on misleading interpretations of record evidence, and ultimately justifies his credibility

---

[3] In fact, Plaintiff's records appear to illustrate this point. The functional report relied on by the ALJ states that Plaintiff only attends church services "with [her] husband [her] side." *Id*. at 209. In addition, in that same section of that same form, Plaintiff also indicates that she does not spend time with people other than her family and that she is "afraid to go out unless my husband goes with me." *Id*. Although the precise nature of Plaintiff's activities are factual determinations left for the ALJ and it does appear here that there is substantial evidence that Plaintiff "has a normal relationship with her husband and occasionally attends church services," *see, e.g.*, *id*. at 209, it is sufficient for this Court to conclude here that because "ha[ving] a normal relationship with her husband and occasionally attend[ing] church services" is not inconsistent with limited social functioning, the ALJ's reasoning is not clear and convincing.

determination on observations which may not be inconsistent with Plaintiff's claimed limitations. Because such reasoning cannot be "specific, clear and convincing," the ALJ erred in discounting Plaintiff's credibility in terms of the intensity, persistence, and limiting effects of his symptoms.

On remand, should the ALJ conclude that Plaintiff is not credible, he must (1) specifically identify which of Plaintiff's statements regarding her symptoms he does not believe, and (2) provide "specific, clear and convincing" reasons for his conclusions. Otherwise, the ALJ must fully credit Plaintiff's allegations and incorporate them accordingly into the disability inquiry.

### B. The ALJ Did Not Provide "Specific and Legitimate Reasons" for Giving "Little Weight" to Plaintiff's Treating Physicians

Next, Plaintiff argues that the ALJ erred in determining that certain medical opinions should be entitled to less weight than others. In support of her application, Plaintiff submitted Mental Impairment Questionnaires ("MIQ") from two of her treating psychiatrists, Dr. Karim and Dr. Danserau. *Id*. at 222-29, 374-79. In determining Plaintiff's residual functional capacity under step four, the ALJ "afforded little weight" to both of these opinions because they were "inconsistent with the relevant medical evidence of record, including longitudinal records from the Monterey County Health Department – Behavioral Health Division at Exhibits 2F and 5F-8F." *Id*. at 31. These exhibits include annual psychosocial assessments from 2013-15 and progress notes from various practitioners, including Dr. Guiroy, Dr. Karim, Dr. Danserau, and several of Plaintiff's social workers. *See id*. at 331-59, 380-566.

In her motion, Plaintiff argues that it was error for the ALJ to discount Dr. Karim's and Dr. Danserau's MIQ opinions, as both doctors are treating physicians, and, as such, are entitled to more weight under 20 CFR § 404.1527.

In the context of Social Security determinations, the weight prescribed to medical opinions depends in part on whether they are offered by treating, examining, or non-examining professionals. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Id*. A treating doctor's opinion, if not contradicted by another doctor, may only be

Case No.: 5:16-cv-06998-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
12

rejected for "clear and convincing" reasons. *Id*. "Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id*. (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725 (quoting *Magallanes*, 881 F.2d at 751). "The ALJ must do more than offer his conclusions." *Id*. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir.1988)).

Here, Dr. Karim's and Dr. Danserau's opinions are contradicted by the opinions of Dr. Rudick, a state agency medical who provided a recommendation used in Plaintiff's initial disability determination (Exhibit 1A at 6, Tr. 80), and Dr. Bilik, a state agency psychological consultant who provided a recommendation used in Plaintiff's disability determination on reconsideration (Exhibit 3A at 6-7, Tr. 92-93). Both Dr. Karim and Dr. Danserau found that Plaintiff had "marked" limitations in her restriction of activities of daily living, "marked" difficulties in maintaining social functioning, and "marked" difficulties in maintaining concentration, persistence, or pace. Tr. 228, 378. Dr. Rudick and Dr. Bilik, on the other hand, both found that Plaintiff had "mild" limitations in her restriction of activities of daily living, "moderate" difficulties maintaining social functioning, and "moderate" difficulties in maintaining concentration, persistence, or pace. *Id*. at 90, 92. In addition, with respect to the number of episodes of decompensation Plaintiff experienced within a 12-month period, Dr. Karim concluded that Plaintiff had three, Dr. Danserau concluded that Plaintiff had two, and Dr. Rudick and Dr. Bilik both concluded that Plaintiff had none. *Id*. at 80, 92, 228, 378.

Thus, because Dr. Karim's and Dr. Danserau's opinions are contradicted, the ALJ needed to provide "specific and legitimate reasons" to reject them. *Lester*, 81 F.3d at 830. The ALJ did not do this. Instead, he simply stated that Dr. Karim's and Dr. Danserau's opinions were

"inconsistent with the relevant medical evidence of record" and then pointed to five exhibits (Exhibits 2F and 5F-8F) which collectively span over 200 pages. These 200 pages cover a period of nearly three and a half years and range from psychological assessments, to social worker notes, to medical records. This is not a specific reason.

In addition, the ALJ made no attempt to account for the fact that Dr. Karim and Dr. Danserau are treating physicians, and, as such, their opinions should be entitled to "more weight" than those of Dr. Rudick and Dr. Bilik, who are non-examining physicians. *Lester*, 81 F.3d at 830. It may be that, if Dr. Karim's and Dr. Danserau's opinions are indeed contradicted by record evidence, this in and of itself could provide a sufficient basis to give these opinions "little weight." However, without specific findings on this point, the Court cannot conclude that this is the case here.

Finally, the Court notes that, at least at first blush, there is some reason to doubt the ALJ's general conclusion that Dr. Karim's and Dr. Danserau's opinions conflict with record evidence. For example, Dr. Karim opined in her MIQ, dated April 24, 2014, that Plaintiff had "marked"[4] difficulties in maintaining concentration, persistence, or pace. *Id*. at 228. This is not inconsistent with Dr. Karim's progress notes from around the same period, which observe that Plaintiff had "good" comprehension and "fair" insight, but "need[ed] support with planning and prioritizing." *Id*. at 358. As another example, Dr. Danserau opined in his MIQ, dated June 5, 2015, that Plaintiff had "marked" limitations in maintaining social functioning. *Id*. at 378. This too is not inconsistent with Dr. Danseau's notes from around the same period, which indicate that Plaintiff's mood was "slightly anxious with a constricted affect." *Id*. at 545. Accordingly, even if the Court were to accept the ALJ's rationale—inconsistency with medical evidence of record—as a "specific and legitimate reason," there is at least some doubt that it is supported by substantial evidence.

In sum, the ALJ's decision to afford little weight to Dr. Karim's and Dr. Danserau's

---

[4] According to the MIQ form, "[m]arked means more than moderate but less than extreme." Tr. 545. "A marked limitation may arise when several activities or functions are impaired or even when only one is impaired, so long as the degree of limitation is such as to seriously interfere with the ability to function independently, appropriately, effectively, and on a sustained basis." *Id*.

opinions is not based on specific and legitimate reasons supported by substantial evidence in the record. On remand, should the ALJ conclude that the opinions of Dr. Karim and Dr. Danserau should be given less weight, he must provide "specific and legitimate reasons" for doing so.

### C. The ALJ Properly Considered All of Plaintiff's Impairments

Finally, Plaintiff argues that the ALJ erred in determining that several of Plaintiff's impairments were not severe and, as such, failed to consider them in making his disability determination. Mot. 9-10. In determining whether Plaintiff had a "severe impairment or combination of impairments" under step two, the ALJ determined that Plaintiff's hypertension, pure hypercholesterolemia, and diabetes mellitus, type II were nonsevere impairments. Tr. 27. He also determined that Plaintiff's obesity, considered alone or in combination with Plaintiff's other impairments, was not severe. *Id*. at 28.

In her motion, Plaintiff argues that these findings were erroneous because the medical evidence of record sufficiently documents the negative effects that Plaintiff has suffered from these conditions. Mot. 10.

"An impairment or combination of impairments may be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2006) (internal quotation marks omitted). To determine whether or not an impairment is severe, the ALJ must decide whether a claimant's impairment or combination of impairments significantly limits his or her physical or mental ability to do "basic work activities." 20 C.F.R. §§ 404.1521(a), 416.921(a); *see Webb*, 433 F.3d at 686-687. Basic work activities are the "abilities and aptitudes necessary to do most jobs," such as (1) physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling; (2) the capacity for seeing, hearing, speaking, understanding, carrying out, and remembering simple instructions; (3) the use of judgment; and (4) the ability to respond appropriately to supervision, co-workers, and usual work situations. 20 C.F.R. § § 404.1521(b), 416.921(b).

The lack of a severe impairment must be "clearly established by medical evidence." *Webb*, 433 F.3d at 687 (quoting SSR 85-28). The ALJ is required to consider the claimant's subjective symptoms in making a severity determination, provided that the claimant "first establishes by objective medical evidence (i.e., signs and laboratory findings) that he or she has a medically determinable physical or mental impairment(s) and that the impairment(s) could reasonably be expected to produce the alleged symptom(s)." SSR 96-3p.

Substantial evidence supports the ALJ's determination that Plaintiff's hypertension, pure hypercholesterolemia, and diabetes mellitus, type II were nonsevere impairments. For example, a number of medical records suggest that, despite these physical ailments, Plaintiff is not significantly limited in physical functions like walking or standing. *See, e.g.*, Tr. 504 (July 2014 note by Dr. Karim that Plaintiff "denies change in gait, posture"); *id*. at 355 (January 2014 note by Dr. Karim that Plaintiff "is using the treadmill 2x per day"); *id*. at 351 (August 2013 note by Dr. Karim that Plaintiff's posture is well-maintained, "gait is heel and toe," and "balance is intact"); *id*. at 337 (September 2012 note by Dr. Guiroy that Plaintiff "continue[s] physical activities when she can").

The ALJ also did not err in concluding that Plaintiff's obesity was a nonsevere impairment. "As obesity is not a separately listed impairment, a claimant will be deemed to meet the requirements if 'there is an impairment that, in combination with obesity, meets the requirements of a listing.'" *Burch*, 400 F.3d at 682 (quoting SSR 02-01p). Here, the ALJ considered obesity in combination with Plaintiff's other physical ailments. Tr. 28; *see also id*. at 32. Because, as discussed above, substantial evidence supports the ALJ's determination that these physical ailments were nonsevere, substantial evidence also supports the ALJ's determination that obesity was nonsevere.

Finally, the Court notes that, here, the ALJ resolved step two in Plaintiff's favor (finding Plaintiff's schizophrenia and depression severe) and continued in the five-step sequential evaluation. Thus, even if the Court were to find that the ALJ erred at step two (it does not), this

error is harmless. *Burch*, 400 F.3d at 682; *see also Gray v. Comm'r of Soc. Sec. Admin.*, 365 Fed. Appx. 60, 61 (9th Cir. 2010) (rejecting argument that the ALJ erred at step two by determining certain impairments were nonsevere, because any alleged error was harmless since "the ALJ concluded that [claimant's] other medical problems were severe impairments"); *Mondragon v. Astrue*, 364 Fed. Appx. 346, 348 (9th Cir. 2010) ("Any alleged error at step two was harmless because step two was decided in [claimant]'s favor with regard to other ailments."). Accordingly, the ALJ's decision cannot be reversed or remanded on this basis.

## IV. ORDER

Based on the foregoing, Plaintiff's Motion for Summary Judgment is GRANTED and the Commissioner's Motion for Summary Judgment is DENIED. The Commissioner's final decision is VACATED and the case is REMANDED for further administrative proceedings consistent with this order. *See Garrison*, 759 F.3d at 1019 ("[I]f additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded.").

Judgment will be entered in favor of Plaintiff and the Clerk shall close this file.

**IT IS SO ORDERED.**

Dated: March 19, 2018

EDWARD J. DAVILA
United States District Judge